UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHANEL M. MCGEE,

      Plaintiff,

v.

PARKER HANNIFIN CORPORATION,

      Defendant.
_____/

CIVIL ACTION NO. 07-12373

DISTRICT JUDGE PAUL V. GADOLA

MAGISTRATE JUDGE DONALD A. SCHEER

### ORDER DENYING DEFENDANT PARKER HANNIFIN CORPORATION'S MOTION FOR PROTECTIVE ORDER REGARDING INADVERTENT DISCLOSURE OF PRIVILEGED DOCUMENTS AND MOTION TO STRIKE COMPLAINT

Defendant Parker Hannifin Corporation's Motion for Protective Order Regarding Inadvertent Disclosure of Privileged Documents and Motion to Strike Complaint was referred to the undersigned magistrate judge for hearing and determination. The parties appeared, by counsel, for hearing on September 27, 2007. Thereafter, the parties submitted supplemental briefs. Having reviewed Defendant's Motion, together with Plaintiff's Response, Defendant's Reply and the Supplemental Briefs of both parties, I find that the motion should be denied.

This action arises from the termination of Plaintiff's employment by Defendant Parker Hannifin Corporation ("Parker"), on or about September 14, 2006, after nearly thirteen years of service. The Complaint alleges that Defendant violated Plaintiff's rights under the Family and Medical Leave Act ("FMLA") and Michigan's Elliott Larson Civil Rights Act ("ELCRA"). Approximately two months after Plaintiff's termination, and upon her written request, Donna Doebler, Defendant's Assistant Human Resources Manager at its Oxford,

Michigan facility, provided McGee a copy of her personnel file.  That production included seventeen items of correspondence between Doebler and members of Parker's in house counsel's office in Cleveland, Ohio.  The correspondence related specifically to Plaintiff's requests for FMLA leave.  Ms. Doebler was also the company official who signed the letter notifying Plaintiff of her termination by Parker (Complaint, Exhibit F).

The Complaint in this action was filed more than six months after Doebler provided Plaintiff with the copy of her personnel record.  Attached to the Complaint as an Exhibit were several of the e-mail communications between Doebler and Defendant's corporate counsel.  The first page of the exhibit depicts an e-mail from corporate counsel to Doebler on July 1, 2002.  That e-mail bears a printed notice that the contents included privileged attorney/client communication.  Following service of the Summons and Complaint, Defendant's attorneys sought the return of "any and all e-mail, memo or other written communications" between Parker's attorneys and other company personnel (Defendant's Motion, Exhibit B-1).  Subsequently, Defendant's attorneys prepared and served a Privilege Log identifying seventeen specific attorney/client communications, each of which was either authored by, or issued to, Ms. Doebler.  Counsel for Plaintiff acknowledged the requests for the return of the documents, but declined to comply, on the theory that the attorney/client privilege had been waived.  The instant Motion followed.

Three distinguishable lines of authority have emerged in connection with the careless or inadvertent disclosure of privileged materials.  See Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine, 302-316 (4th Ed. 2001). Commentators describe a traditional approach of "strict accountability" under which a careless or inadvertent disclosure was invariably determined to be a permanent waiver of

the attorney/client privilege protection.  See, In Re: Sealed Case, 877 F.2d 976, 980 Fed. Circuit 1989; Ares-Serono, Inc. v. Organon Int'l B.V., 160 FRD 1, 4 (D Mass. 1994).

A few courts have taken a far more lenient approach, holding that an inadvertent disclosure in the absence of gross negligence would not constitute a waiver of the privilege. Such courts maintain that a waiver of attorney/client privilege may exist only through the client's knowing and intentional surrender of the privilege, and never by simple inadvertence.  See, Gray v. Bicknell, 86 F.3d 1472, 1483 (8th Cir. 1996); Kansas-Nebraska Natural Gas Co. Inc. v. Marathon Oil Co., 109 FRD 12, 21 (D Neb. 1983).  The Court of Appeals of Michigan has adopted this approach in at least two decisions.  Franzel v. Kerr Mfg. Co., 234 Mich.App. 600 (1999); Sterling v. Keiden, 162 Mich.App. 88 (1987).

A third, intermediate approach has developed, under which a court renders a determination regarding waiver upon an evaluation of the facts of the particular case in light of certain analytical factors.  This court (Judge Borman) has adopted the intermediate approach, based upon the factors of: (1) the reasonableness of precautions taken in view of the extent of document production; (2) the number of inadvertent disclosures; (3) the magnitude of the disclosure(s); (4) any measures taken to mitigate the damage of the disclosure(s); and (5) the overriding interests of justice. Grace Community Church v. Lenox Township, 06-13526, 2007 U.S. Dist. LEXIS 64987 (E.D. Mich Aug. 31, 2007).  Defendant has cited Grace in its Supplemental Memorandum, and I am persuaded that the intermediate, fact driven approach to determining the existence of waiver is appropriate in this case as well.

In an Affidavit submitted in support of Defendant's Motion, Doebler, avers that she responded to Plaintiff's written request for a copy of her personnel file. Doebler further asserts that she was seeking legal advice from Parker attorneys Jontz and Mulac when she communicated with them on multiple occasions regarding Plaintiff's request for FLMA leave. Doebler maintains that she "inadvertently included privileged communications in the copy of the personnel file that was provided to Plaintiff." She claims that she did not intentionally or knowingly disclose privileged communications between herself and Hannifin's attorneys, and that she did not knowingly or intentionally waive any privilege that applied to those communications. (Exhibit A to Defendant's Motion).

Attached to Defendant's Supplemental Memorandum is the Affidavit of Jim Baskey, Parker's Area Vice President of Human Resources. Baskey is employed in Cleveland, Ohio, and states that the Parker facility in Oxford, Michigan, where Doebler is employed, is within his area of responsibility. Baskey avers that it is Defendant's practice and procedure not to include attorney/client and/or work product privilege communications as part of an employee's personnel file. Specifically, he states that an employee's personnel file should not contain e-mails between Human Resources personnel at a plant facility and in house attorneys from the corporate office in Cleveland. Baskey states that it is not Defendant's practice and procedure to ever disclose and/or produce any attorney/client and/or work product privilege communication to any third parties, including former employees. Thus, if any e-mails between Human Resources personnel at a plant facility and in house attorneys from the corporate office were kept in an employee's personnel file, "it would be a mistake and would not comply with Parker's established practices and procedures." (Exhibit C to Defendant's Supplemental Memorandum).

The burden of establishing the existence of the privilege rests with the person asserting it. See, In Re: Grand Jury Investigation No. 83-2-35, 723 F.2d 447, 450 (6th Cir. 1983). Generally, the "attorney/client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." In Re: Grand Jury Proceedings October 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996). A client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. United States v. Dakota, 197 F.3d 821, 825 (6th Cir. 1999) (citing In Re: Von Bulo, 828 F.2d 94, 104 (2nd Cir. 1987)). This court has rejected claims of inadvertence in the disclosure of attorney/client communications to non-privileged third parties where the documents were indiscriminately mingled with non-privileged papers. See, United States v. Kelsey-Hayes Wheel Co., 15 F.R.D. 461 (E.D. Mich 1954) ("One measure of their continuing confidentiality is the degree of care exhibited in their keeping, and the risk of insufficient precautions must rest with the party claiming the privilege.") Plaintiff here argues that the record supports the inference of intentional disclosure, despite Doebler's claims to the contrary.

### 1.     **Precautionary Measures:**

The record does not specifically disclose whether Doebler personally placed copies of her privileged attorney/client communications into Plaintiff's personnel file as part of her response to McGee's request for it. If she did so, her actions would most certainly constitute conduct which implied a waiver of the privilege or a consent to disclosure. Even if the court assumes, however, that another, unidentified, individual placed the documents in the file, the conclusion is inescapable that Doebler failed to adequately review the personnel file to ensure against disclosure of privileged materials. Doebler could certainly

5

not have failed to comprehend the privileged nature of the documents in question. She, after all, was either the author or the addressee of each communication. She was fully aware of their content. Furthermore, at least one of the documents was clearly marked as privileged attorney/client material. The failure to remove the documents from the file prior to its transmission to Plaintiff was either intentional or grossly negligent on Doebler's part. In either event, the forwarding of the documents to the Plaintiff would properly be viewed as a waiver of the privilege. I further note the lack of any evidence that Doebler engaged Defendant's in-house counsel in the review or assessment of the documents produced to Plaintiff.

### 2. **Number of Disclosures**

The disclosures at issue occurred simultaneously. Plaintiff had submitted a written request for a copy of her personnel record. That request did not impose a substantial burden or a deadline upon the Defendant. Thus, this case is clearly distinguishable from those involving the inadvertent transmission of a few privileged documents in connection with a large scale discovery response in the course of litigation. While the disclosure in this case was the product of a single incident, seventeen separate privileged communications were transmitted. The character of the communications was certainly understood by Doebler. She admits in her Affidavit that she communicated with Defendant's counsel for the purpose of receiving legal advice. Doebler's inclusion of seventeen privileged communications in Plaintiff's personnel file, or her failure to note such inclusion by another agent of the Defendant, must reasonably be viewed as either intentional, or grossly negligent.

### 3. Magnitude of Disclosure

All of the seventeen privileged communications provided to Plaintiff deal with her requests for FMLA leave. It appears that the disclosure of the communications on that subject is complete. Plaintiff was provided with the entire course of correspondence by or to Doebler on the FMLA issue. That fact, once again, suggests that the transmission of the documents was intentional, or grossly negligent. Total confidentiality cannot be restored at this juncture, although, under appropriate circumstances, the court could enter an order limiting or prohibiting the use of the privileged information in the prosecution of this action.

### 4. Mitigation of Damage

There is no evidence that Defendant took any steps to discover and/or to mitigate the effect of its disclosure of privileged communications until approximately seven months later, after Plaintiff employed them as Exhibits to the Complaint in this action.

### 5. Interests of Justice

There is no doubt that the attorney/client privilege serves a valuable role in American jurisprudence. The existence of privilege protection promotes the interests of full disclosure of pertinent facts by a client to his counsel, by offering assurance that their communications will be safe from intrusion. Nonetheless, "[t]he existence of the privilege is in constant tension with the proposition that the adversary process is designed to ferret out the truth and that any secrecy accorded by the law must be strictly construed lest the secrecy thwart the search for truth." Epstein, The Attorney Client Privilege and the Work Product Doctrine, 12 (4th Ed. 2001). "The principle that precautions must be taken by the holder of the privilege if the privilege is to be maintained has been given effect in a multiplicity of cases."

7

Id. at 303.  While Defendant in the case at bar maintains that the disclosure of its privileged communications was an act of inadvertence, it is clear that the documents were not produced to Plaintiff merely by way of clerical error.  Rather, they were compromised by an assistant manager with jurisdiction over the records requested by Plaintiff, and who was, in addition, a party to the communications themselves.  The circumstances surrounding the provision of those communications to Plaintiff (an obviously adverse party) are such as such as to suggest an intentional waiver of, or a complete disregard for, their privileged character.  In either event, I conclude that a finding of waiver is appropriate.

Federal Rule of Evidence 501 provides that ". . . the privilege . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.  Based upon my review of federal case law, I am satisfied that Defendant's production of the documents in question to Plaintiff, whether by intentional act or carelessness, operates as a waiver of the attorney/client privilege, at least in connection with the FMLA claim asserted in Count I of the Complaint.  F.R.E. 501 further provides, however, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege . . . shall be determined in accordance with state law."  That circumstance applies to Count II, which is based upon ELCRA.  Defendant relies upon the decisions of the Michigan Court of Appeals in Franzel v. Car Manufacturing Company, 234 Mich.App. 600 (1999) and Sterling v. Keidan, 162 Mich.App. 88 (1987).  Those cases appear to stand for the proposition that, even though the inadvertent disclosure of privileged information eliminates any security against publication, the loss of the right to control the introduction of privileged matter into evidence requires an intentional, voluntary act and cannot arise by implication . . .."

Franzel, 234 Mich.App. at 615-16. The Franzel court relied upon the Sterling decision, in which the Michigan Court of Appeals rejected the analysis of this court in United States v. Kelsey-Hayes Wheel Company, 15 FRD 461, 465 (E.D. Mich. 1954). Kelsey-Hayes held that the risk of inadvertent disclosure as a result of insufficient precaution rests with the party claiming the privilege, and that confidential documents indiscriminately intermingled with routine corporate documents had lost their privileged character and were deemed admissible. There is federal case law supporting the proposition that when federal and state claims are joined in the same action, assertions of privilege are determined under federal law. See, Wm T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100, 104 (3rd Cir. 1982); but see In Re: Carmeon, 153 B.R. 985 (1993). Whatever the validity of Defendant's reliance upon Franzel and Sterling, the holdings would only apply in this case with respect to Plaintiff's ELCRA claims and, even then, would, at most, only serve to limit Plaintiff's use of the confidential communications in evidence at trial. Parker may wish to consider a motion for the severance or remand of the state claims.

For all of the above reasons, I conclude that Defendant Parker Hannifin Corporation's Motion for Protective Order Regarding Inadvertent Disclosure of Privileged Documents and Motion to Strike Complaint should be, and the same is hereby denied.

                                      s/Donald A. Scheer
                                      DONALD A. SCHEER
                                      UNITED STATES MAGISTRATE JUDGE
DATED: October 18, 2007

---

**CERTIFICATE OF SERVICE**
I hereby certify on October 18, 2007 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 18, 2007. **None.**
                                      s/Michael E. Lang
                                      Deputy Clerk to
                                      Magistrate Judge Donald A. Scheer
                                      (313) 234-5217